ERNEST LAWING AND WIFE, JENNY LEE LAWING v. ARTHUR JAYNES AND WIFE, EDITH JAYNES

ERNEST LAWING AND WIFE, JENNY LEE LAWING v. JOHN C. McLEAN AND WIFE, KATHLEEN H. McLEAN

No. 79

(Filed 1 July 1974)

1. Lis Pendens— notice not cross-indexed — no constructive notice

Where notice of *lis pendens* was filed in June 1966 but was not cross-indexed until May 1973, it did not constitute constructive notice of a pending action involving the property in question to purchasers of the property whose deed was recorded in March of 1971. G.S. 1-118.

2. Vendor and Purchaser § 1; Registration § 1— option agreement — validity — no necessity for registration

Under G.S. 47-18(a) registration of an option to purchase land is not essential to its validity as against lien creditors or purchasers for a valuable consideration from the optionor.

3. Registration § 3— expired option — no constructive notice of action for specific performance

A recorded option agreement showing an expiration date of 1 March 1966 did not constitute constructive notice to purchasers of the

Lawing v. Jaynes and Lawing v. McLean

property from the optionors in 1971 that the optionees had exercised
the option and had instituted an action against the optionors to compel
specific performance of the option agreement.

4. **Vendor and Purchaser § 10— option — action for specific performance
— purchase by third person — burden of proving absence of notice
of action**

In an action to set aside a deed conveying to defendants property
which plaintiffs had allegedly exercised an option to purchase, the
burden of proof was on defendants to establish that they were pur-
chasers for a valuable consideration without actual notice of plaintiffs'
pending action against the original owners for specific performance
of the option agreement.

5. **Registration § 1— necessity for registration to pass title**

Under G.S. 47-18(a) conveyances, contracts to convey, and leases
for more than three years are not valid to pass title against a pur-
chaser for a valuable consideration unless and until registered in the
county where the land lies.

6. **Lis Pendens— purpose of statutes**

The *lis pendens* statutes enable a purchaser for a valuable con-
sideration who has no actual notice of the pendency of litigation affect-
ing the title to the land to proceed with assurance when the *lis pendens*
docket does not disclose a cross-indexed notice disclosing the pendency
of such an action.

ON *certiorari* to review the decision of the Court of Appeals
reported in 20 N.C. App. 528, 202 S.E. 2d 334.

On 9 March 1964 defendants Jaynes executed an option
agreement in which they granted to plaintiffs the right to
purchase within the time and upon the terms set forth a tract
of 33.5 acres, more or less, in Mills River Township, Henderson
County, North Carolina, including the dwelling thereon, and
also the interest of defendants Jaynes in a herd of cattle and
"the milk base derived therefrom." The option agreement was
filed for registration on 10 March 1964 and duly recorded on
13 March 1964, in Book 419, Page 311, in the Office of the
Register of Deeds of Henderson County, North Carolina.

On 13 April 1966 plaintiffs instituted the above-entitled
action against defendants Jaynes to compel specific performance
of the portion of the option agreement relating to the land and
dwelling. In substance, plaintiffs alleged they had exercised
their option within the time provided therefor but defendants
Jaynes had failed and refused to convey the property to plain-
tiffs as required by the option agreement. The answer filed by
defendants Jaynes on 31 May 1966 contained general denials
of plaintiffs' essential allegations.

On 10 June 1966 plaintiffs filed in the Office of the Clerk of Superior Court of Henderson County a Notice of Lis Pendens in the form prescribed by G.S. 1-116 in which they set forth the essential facts alleged in the complaint in their pending action against defendants Jaynes. However, this Notice of Lis Pendens was not cross-indexed as required by G.S. 1-117 until 22 May 1973.

After plaintiffs' action against defendants Jaynes had been pending for nearly five years, to wit, on 4 March 1971, defendants Jaynes executed and delivered to defendants McLean a deed for the land covered by the option agreement of 9 March 1964 except a small portion on which the Jaynes dwelling was located. This deed was filed for registration on 5 March 1971, and on that date recorded in Book 482, Page 455, Henderson County Registry.

On 27 December 1972 plaintiffs instituted a separate action entitled as above against defendants McLean. In substance, plaintiffs alleged the facts stated above and prayed that the deed from defendants Jaynes to defendants McLean be declared null and void. In an answer filed 15 February 1973, defendants McLean denied plaintiffs' essential allegations.

The two cases were consolidated for trial. Upon waiver of jury trial, the evidence was heard by Judge Thornburg. Judge Thornburg's findings of fact (Nos. 1-14) are set forth in full in Chief Judge Brock's opinion for the Court of Appeals. Upon these findings of fact and his conclusions of law, Judge Thornburg entered judgment in favor of plaintiffs. All defendants excepted and appealed.

The Court of Appeals, for reasons stated in the opinion of Chief Judge Brock, reached the following results: (1) "In the Jaynes case the findings of fact will not be disturbed; the conclusions of law and decree are vacated; and the cause is remanded for entry of a proper decree upon the facts as found." (2) "In the McLean case a new trial is ordered."

On plaintiffs' petition, we granted certiorari to review the decision of the Court of Appeals.

*Bennett, Kelly & Cagle by E. Glenn Kelly for plaintiff appellants.*

*Kenneth R. Youngblood and Boyd B. Massagee, Jr. for defendant appellees.*

BOBBITT, Chief Justice.

In the agreement of 9 March 1964 defendants Jaynes granted to plaintiffs an option to purchase the real property at a purchase price to be computed on the basis of $500.00 per acre, or fractional part thereof, as determined by a surveyor acceptable to both parties, and the additional sum of $9,000.00 for the dwelling. The agreement provided: "This option shall exist and continue for a period of TWO CALENDAR YEARS from the 1st day of March, 1964, but no longer."

In their agreement of 9 March 1964, defendants Jaynes also granted to plaintiffs an option to purchase the interest of defendants Jaynes in a herd of cattle and in a milk base. The Court of Appeals held, and we agree, that these options were severable. Since plaintiffs elected to exercise only their option relating to the real property, the terms of the separate option relating to the cattle and milk base are not germane to decision.

The Court of Appeals held, and we agree, that the evidence supports Judge Thornburg's findings to the effect that, within the time provided therefor, plaintiffs duly exercised their option to purchase the real property, including the dwelling thereon.

Moreover, we agree with the disposition made by the Court of Appeals of defendants' assignments of error relating to Judge Thornburg's rulings on the admissibility of evidence. Hence, as between plaintiffs and defendants Jaynes, plaintiffs were entitled to specific performance. Although their action to compel specific performance was instituted 13 April 1966, and had been at issue since 31 May 1966, it was pending and awaiting trial on 4 March 1971 when defendants Jaynes conveyed to defendants McLean all the real property except the small portion on which the Jaynes dwelling was located.

The crucial question is whether defendants McLean, in respect of the portion of the real property conveyed to them, acquired rights therein superior to the rights of defendants Jaynes, their grantor.

It is here noted that, in order to obtain the relief they seek in their action against defendants McLean, plaintiffs must first establish their right to compel specific performance by defendants Jaynes. Since the two cases were consolidated for trial, the findings of fact of Judge Thornburg pertinent to plaintiffs' right

to compel specific performance by defendants Jaynes apply to the Lawing-McLean case as well as to the Lawing-Jaynes case.

Defendants McLean excepted to and assigned as error Finding of Fact No. 10 that, on or before the execution and recordation of the Jaynes-McLean deed, defendants McLean had constructive notice of plaintiffs' recorded option and of their pending action against defendants Jaynes.

G.S. 1-118 provides: "From the cross-indexing of the notice of lis pendens only is the pendency of the action constructive notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed or subsequently registered is a subsequent purchaser or incumbrancer, and is bound by all proceedings taken after the cross-indexing of the notice to the same extent as if he were made a party to the action. For the purposes of this section an action is pending from the time of cross-indexing the notice."

[1]   Since the Jaynes-McLean deed was executed and recorded in March of 1971, the Notice of Lis Pendens cross-indexed on 22 May 1973 did not constitute constructive notice to defendants McLean of the pendency of the Lawing-Jaynes action.

[3]   To what extent, if any, did the option agreement, which was recorded in March of 1964, constitute constructive notice to defendants McLean that plaintiffs had exercised their option and had instituted an action to compel specific performance?

G.S. 47-18(a) provides: "No conveyance of land, or contract to convey, or lease of land for more than three years, shall be valid to pass any property as against lien creditors or purchasers for a valuable consideration from the donor, bargainor or lessor but from the time of registration thereof in the county where the land lies. . . . "

By the unilateral contract of 9 March 1964, defendants Jaynes granted to plaintiffs *option* rights. Their contract did not legally bind plaintiffs to purchase the property at any time at any price. *See Sandlin v. Weaver*, 240 N.C. 703, 707, 83 S.E. 2d 806, 809 (1954), in which the Court quotes from 55 Am. Jur., Vendor and Purchaser § 27, the following: "An option to purchase real property may be defined as a contract by which an owner of real property agrees with another person that the latter shall have the privilege of buying the property at a specified

price within a specified time, or within a reasonable time in the future, and which imposes no obligation to purchase upon the person to whom it is given. Until the holder or owner of an option for the purchase of property exercises it, he has nothing but a mere right to acquire an interest, and has neither the ownership of nor any interest in the property itself." *Accord,* 91 C.J.S., Vendor & Purchaser § 4.

"The optionee has no 'interest' in the land itself, legal or equitable, whereas in a contract for sale, both the vendor and vendee have 'interests' in the land, and both are bound by certain obligations. An option is not a contract to sell, but it is transformed into one on acceptance by the optionee." Christopher, Options to Purchase Real Estate in North Carolina, 44 N.C.L. Rev. 63, 64 (1965), citing numerous supporting cases.

G.S. 47-18(a) refers expressly to conveyances of land, to contracts to convey land, and to leases of land for more than three years. It provides that *these* are not valid to pass any property as against lien creditors or purchasers for a valuable consideration from the donor, bargainor or lessor but from the time of registration thereof in the county where the land lies.

"The registration or record of an instrument operates as constructive notice only when the statute authorizes its registration; and then only to the extent of those provisions which are within the registration statutes. Therefore, the registration of a deed or other instrument not entitled or required to be recorded is not constructive notice to subsequent purchasers. . . . " 92 C.J.S., Vendor & Purchaser § 341(b)(1), pp. 260-61. The author cites as supporting authority the decision of this Court in *Chandler v. Cameron,* 229 N.C. 62, 47 S.E. 2d 528, 3 A.L.R. 2d 571 (1948), which, as succinctly and accurately stated in the fourth headnote (N. C. Report), holds: "Registration is constructive notice as to all instruments authorized to be registered, but is not constructive notice of provisions not coming within the registration laws, even though embodied in an instrument required to be recorded."

[2]   Under G.S. 47-18(a) registration of an option to purchase land is not essential to its validity as against lien creditors or purchasers for a valuable consideration from the optionor. Unless modified by Chapter 1174, Session Laws of 1961, codified as G.S. 47-117 through G.S. 47-120, it did not charge defendants McLean with *constructive* notice thereof.

The 1961 Act is entitled "An Act to Amend Chapter 47 of the General Statutes so as to Provide for the Filing of Memoranda of Leases and Options for Registration." The portion thereof enacted as G.S. 47-119 is entitled, "Form of memorandum for option to purchase real estate," and provides: "An option to purchase real estate *may* be registered by registering a memorandum thereof which shall set forth: (1) The names of the parties thereto; (2) A description of the property which is subject to the option; (3) The expiration date of the option; (4) Reference sufficient to identify the complete agreement between the parties. Such a memorandum may be in substantially the following form: . . . " (Our italics.) [The statute then sets forth a short form prepared in accordance with the quoted provisions.] G.S. 47-118 contains similar provisions with reference to "a lease of land or land and personal property." G.S. 47-120 provides: "Such memorandum of an option to purchase real estate, or lease as proposed by G.S. 47-118 or G.S. 47-119, when executed, acknowledged, delivered and registered as required by law, shall be as good and sufficient notice, and have the same force and effect as if the written lease or option to purchase real estate had been registered in its entirety." Although the 1961 Act provides that an option *may* be registered by using the approved short form memorandum, the registration thereof is only "as good and sufficient notice, and [has] the same force and effect as if the written . . . option to purchase real estate had been registered in its entirety."

Since the question has not been considered in the briefs, we make no ruling with reference to whether the recordation of the option agreement was sufficient to give defendants McLean constructive notice of the contents thereof. Our further consideration with reference to constructive notice assumes that defendants McLean had knowledge of *the contents* of the recorded option prior to the deed of 4 March 1971 from defendants Jaynes to defendants McLean.

Inspection of the recorded option would have disclosed that the time within which plaintiffs were permitted to exercise their option had expired on 1 March 1966, that is, more than five years before the deed from defendants Jaynes to defendants McLean.

We note that, under the registration statutes of Maryland and of Georgia, it has been held that the rights of an optionee under a properly recorded option agreement who exercises his

option within the prescribed time are superior to those of a third party to whom the optionor has conveyed the same property *before the time for exercising the option has expired. Daniel v. Kensington Homes, Inc.,* 232 Md. 1, 192 A. 2d 114 (1963); *Banks v. Harden,* 221 Ga. 505, 145 S.E. 2d 563 (1965).

In *Trogden v. Williams,* 144 N.C. 192, 56 S.E. 865, 10 L.R.A. (N.S.) 867 (1907), the action was for specific performance of an alleged exercised option. The option was granted to plaintiffs by executors. The will conferred a power of sale upon the executors but gave the devisees the right to elect to take the land in its unconverted form. After the date for exercising the option as stated in the record thereof had passed, all devisees, except the owner of an undivided one-fifth interest, elected to take the land itself and then contracted to convey their interest to defendant Remick. The Court concluded that the purported option was invalid and unenforceable as between the plaintiffs and the executors. Hence, it was unnecessary to decide whether defendant Remick, as a purchaser for a valuable consideration from the devisees, acquired rights superior to those of the plaintiffs. Even so, this statement from the opinion of Justice Connor is a persuasive dictum: "The registration of the option, 4 May 1905, gave no other notice than that the plaintiffs had a right to pay the money and call for the title within ninety days. Nothing else appearing of record, it would seem that Remick became, by the contract of 28 June 1905, a purchaser for value when he deposited the full amount of the purchase money in the bank, to be paid when title was made. No deed appearing of record, he was entitled to treat the option as at an end. To make the extension of time to pay the money binding upon subsequent purchasers, the option *as changed* should have been registered. It was a 'contract to convey' within the language and purpose of section 980 of the Revisal." (Our italics.) Thus, *if* the option were valid, and *if* plaintiffs had exercised their option within the prescribed time, the option would have been changed into a contract to convey and as such ineffective to pass title as against a purchaser for a valuable consideration but from the registration thereof as provided in G.S. 47-18(a), formerly Section 980 of the Revisal. It was adjudged that plaintiffs were not entitled to the relief they sought and that defendant Remick was entitled to a deed for the four-fifths interest covered by the contract signed by the devisees.

The record herein disclosed that the time for exercising the option had expired. It failed to show that defendants Jaynes had

conveyed or contracted to convey the real property pursuant to the option or otherwise. Defendants Jaynes tendered and delivered to defendants McLean a deed with full warranties. Nothing else appearing, we perceive no sound basis for the view that defendants McLean were required by inquiry *dehors* the record to explore the various circumstances under which the option agreement *might* still be a viable contract between the parties thereto.

A similar question was considered by this Court in *Insurance Co. v. Knox*, 220 N.C. 725, 18 S.E. 2d 436, 138 A.L.R. 1438 (1942). This action was instituted 10 November 1937 to foreclose a deed of trust which secured a note owned by the plaintiff. The maturity date of the note as set forth in the record thereof was 10 May 1928. On 20 November 1930, the owners executed a second deed of trust on the same land. Pursuant to the foreclosure of this deed of trust in 1933 the trustee conveyed the property to Ola G. Hendrix. On 24 April 1936, she and her husband, G. H. Hendrix, conveyed the property to J. W. Hinson and wife, Nettie Hinson. On 9 April 1939, during the pendency of the foreclosure action, the Hinsons conveyed the property to C. M. Irvin, Jr., and wife, Pearl M. Irvin, and on the same date the said Irvins executed a deed of trust to Robert H. Irvin, Trustee. When the defendants Irvin purchased the land they had no actual knowledge of the pendency of the foreclosure action or of the recorded deed of trust held by plaintiff. C. M. Irvin, Jr., and wife, Pearl M. Irvin, and Robert H. Irvin, Trustee, were made parties defendant on 13 Septetmber 1940. The foreclosure action was commenced 10 November 1937, as against all parties other than the Irvins, within ten years from the maturity date of the note according to the record. However, the Irvins were not joined as parties defendant until more than ten years from the maturity date of the note according to the record and more than ten years from 10 January 1930, the date of the last payment on the note. The defendants contended that plaintiff's right to foreclose what had been a prior first lien deed of trust was barred by the ten-year statute of limitations.

In the foreclosure action considered in *Insurance Co. v. Knox, supra,* no separate notice of *lis pendens* was filed. The record of the deed of trust the plaintiff sought to foreclose constituted constructive notice of its provisions. Decision turned upon whether this record was also constructive notice of the pending foreclosure action. In a four-to-three decision, the Court

answered "Yes," and affirmed the superior court's judgment in favor of the plaintiff. The majority views are set forth in the opinion of Justice (later Chief Justice) Barnhill and in the concurring opinion of Chief Justice Stacy. Dissenting opinions were filed by Justice (later Chief Justice) Devin, and by Justice Seawell.

As stated in the opinion of Justice Barnhill, this question was presented: "When an action is instituted to foreclose a duly registered deed of trust, must notice of the proceedings be cross-indexed as required by C.S. 501, so as to protect the mortgage creditor against subsequent purchasers from the mortgagor or his assigns who are parties to the action?" The majority gave a negative answer.

C.S. 501 provided: "Any party to an action desiring to claim the benefit of a notice of lis pendens, whether given formally under this article or in the pleadings filed in the case, shall cause such notice to be cross-indexed by the clerk of the superior court in a docket to be kept by him, to be called Record of Lis Pendens, which index shall contain the names of the parties to the action, where such notice (whether formal or in the pleadings) is filed, the object of the action, the date of indexing, and sufficient description of the land to be affected to enable any person to locate said lands. . . . " We note that C.S. 501, as amended, is now codified as G.S. 1-117 and that the statute then codified as C.S. 502 is identical with G.S. 1-118.

The majority were of the opinion that the recorded deed of trust gave notice not only of the existence of the lien created thereby but of the remedies available in the event of default, primarily (1) sale under the power contained in the instrument, and (2) sale by foreclosure proceedings. Justice Barnhill stated: "When an examiner finds a mortgage of record foreclosure of which is apparently barred the questions immediately arise: (1) has the mortgage debt been kept in date by payments; (2) has the power of sale, if any, been exercised; and (3) has the mortgagee exercised or is he exercising his right to foreclose, thus suspending the statute of limitations?"

Applying the rationale on which the decision was based, Justice Barnhill said: "Here, at the time the Irvins purchased the deed of trust was on record. Upon its face it was in default. They were put on notice that the rights existing in the holder of the lien to foreclose for satisfaction of the debt had accrued.

This notice would demand that a prudent examiner investigate further to ascertain whether the debt had been kept in date by payment and whether the lienholder was pursuing either of the remedies available, and it was the duty of the Irvins to be vigilant, take care of their interests and make such further investigation as the circumstances demanded. This clearly required that they ascertain whether foreclosure proceedings were pending. This information was readily available either from the civil issue docket or from the trustee in the deed of trust."

The justices who dissented were of the opinion that constructive notice of the pendency of an action to foreclose a deed of trust on real estate could be given only by the filing of a notice of *lis pendens* as provided in C.S. 501. The following excerpt from the dissenting opinion of Justice Devin indicates their views: "A search of the records in the office of the register of deeds would not have revealed the pendency of a suit involving the title to the land. A search of the records in the clerk's office would have been equally futile, since the pendency of the action did not appear cross-indexed on the *lis pendens* docket in that office. A searcher of titles is now no longer required to examine the multitudinous files of civil actions to determine whether an action affecting the title of the land has been instituted. The statute was intended to facilitate the examination of titles and to afford a convenient means of giving notice of suit, and to guard against the consequences of transfers of title pending the action."

By Chapter 1163, Session Laws of 1959, the General Assembly amended the statutes relating to the filing and cross-indexing of notice of *lis pendens*. The 1959 Act amended G.S. 1-116 so as to require that "[a]ny person desiring the benefit of constructive notice of pending litigation must file *a separate, independent notice thereof,* which notice shall be cross-indexed in accordance with G.S. 1-117," and provided that "[n]otice of pending litigation must be filed with the clerk of the superior court of each county in which any part of the real estate is located, not excepting the county in which the action is pending, *in order to be effective against bona fide purchasers* or *lien creditors* with respect to the real property located in such county." (Our italics.)

As amended by the 1959 Act, G.S. 1-116 specifies the actions in which such notice is required, including actions affecting title to real property, and also prescribes the contents of the

required notice and when it may be filed. Seemingly, the 1959 Act was intended to alleviate the burden placed upon a prospective purchaser by the decision in *Insurance Co. v. Knox, supra,* and to "greatly facilitate the examination of titles and afford ample protection to prospective purchasers of real property with respect to which litigation is pending." 38 N.C.L. Rev., at 214.

[3] For the reasons set forth, we conclude that defendants McLean did not have *constructive* notice of plaintiffs' pending action against defendants Jaynes to compel specific performance of the option agreement. The determinative factual issue is whether defendants McLean had *actual* notice thereof.

Finding of Fact No. 11 reads as follows: "The defendant John C. McLean had actual notice that plaintiffs claimed an interest in the real estate subject to plaintiffs' option and had this actual notice prior to March 5, 1971."

Being of the opinion the findings of fact were not dispositive of the material issues therein, the Court of Appeals awarded a new trial in the Lawing-McLean action. It treated Finding of Fact No. 11 as a finding "that Mr. McLean had actual notice of the pendency of the lawsuit against Jaynes to obtain specific performance by Jaynes to convey the land in controversy to plaintiffs," and that there was evidence sufficient to support such finding. However, it considered the findings of fact insufficient because of the trial court's failure "to determine whether Mr. McLean was acting for himself only, or was acting in behalf of Mrs. McLean and himself, or indeed who conducted the negotiations, when the purchase of a portion of the property in controversy was made from Jaynes."

[4] The foregoing disposition by the Court of Appeals is based on the view that the burden of proof was on plaintiffs to establish that defendants McLean had actual notice of the Lawing-Jaynes action when they obtained the deed of 4 March 1971 from defendants Jaynes. Judge Thornburg's findings of fact indicate this was the legal theory on which he conducted the trial. On the authority and for the reasons set forth below, we hold the burden of proof was on defendants McLean to establish that they were purchasers for a valuable consideration without actual notice of plaintiffs' pending action against defendants Jaynes for specific performance of the option.

In *Morris v. Basnight,* 179 N.C. 298, 102 S.E. 389 (1920), the opinion of Justice (later Chief Justice) Hoke concluded with

these words: "Our statute on the subject, Rev., 462 [now G.S. 1-118], only purports to deal with constructive notice, and its effect on subsequent purchasers, but where one buys from a litigant with full notice or knowledge of the suit, and of its nature and purpose, and the specific property to be affected, he is concluded or his purchase will be held ineffective and fraudulent as to decree rendered in the cause and the rights thereby established. [Citations omitted.]" *Accord,* 71 Am. Jur. 2d, Specific Performance § 169. In *Morris v. Basnight, supra,* the Court affirmed a judgment based on issues submitted in accordance with the quoted statement.

In *Whitehurst v. Abbott,* 225 N.C. 1, 33 S.E. 2d 129, 159 A.L.R. 380 (1945), the controversy was between heirs of the deceased and parties who purchased from devisees during the pendency of caveat proceedings in which the purported will was adjudged null and void. The opinion of Justice (later Chief Justice) Barnhill states: "But *lis pendens* notice under the statute is not exclusive. Nor is it designed to protect intermeddlers. When a person acquires an interest in property pending an action in which the title thereto is at issue, from one of the parties to the action, with notice of the action, *actual* or constructive, he is bound by the judgment in the action just as the party from whom he bought would have been." *Id.* at 6, 33 S.E. 2d at 133. Applying this legal principle to the case under consideration, the opinion states: "The uncontroverted evidence tends to show and it seems to be admitted that Hinton conveyed to McPherson *pendente lite.* This being true, his deed was ineffective and fraudulent as against the final decree in the pending action. Upon such showing plaintiffs were entitled to judgment, certainly as against McPherson, unless it should be made to appear that he purchased for value and without notice. This is an affirmative defense and he who claims to be a *bona fide* purchaser for value without notice so as to avoid the defective character of his deed has the burden of proving that fact. *Hughes v. Fields,* 168 N.C. 520, 84 S.E. 804; *King v. McRackan,* 168 N.C. 621, 84 S.E. 1027 (affirmed on rehearing, *King v. McRackan,* 171 N.C. 752, 88 S.E. 226) ; 27 R.C.L. 737."

In *Waters v. Pittman,* 254 N.C. 191, 118 S.E. 2d 395 (1961), the deed under which defendants claimed was recorded before the recordation but after the execution and delivery of the deed under which the plaintiff claimed. It was held that the plaintiff's title was good "unless the defendants are purchasers for

value, and the burden of proof is on the defendants to show by a preponderance of the evidence that they are purchasers for value. *Hughes v. Fields,* 168 N.C. 520, 84 S.E. 804; *King v. McRackan,* 168 N.C. 621, 84 S.E. 1027 (affirmed on rehearing, 171 N.C. 752, 88 S.E. 226); *Bank v. Mitchell,* 203 N.C. 339, 166 S.E. 69; *Whitehurst v. Abbott,* 225 N.C. 1, 33 S.E. 2d 129, 159 A.L.R. 380; *Skipper v. Yow,* 240 N.C. 102, 81 S.E. 2d 200. See also Anno: Burden of Proof—Good Faith—Consideration, 107 A.L.R. 502, *et seq.,* where the authorities bearing on the burden of proof in a situation like that now before us are collected." *Id.* at 194, 118 S.E. 2d at 397.

In *King v. McRackan,* 171 N.C. 752, 88 S.E. 226 (1916), the Court pointed out that this rule "places the burden of proof on the purchaser, who usually knows all the facts, and who has it in his possession to inform the court of the amount paid and to whom, and of all the circumstances surrounding the purchase, while the opposite rule, and the one contended for by the petitioner, would impose the burden on one unacquainted with the facts, and he would be required to establish a negative, to wit, that the other party was *not* a purchaser for value."

No evidence was offered with reference to the negotiations between defendants Jaynes and defendants McLean leading up to the execution of the deed of 4 March 1971, nor was there any evidence as to the terms of their transactions. Neither of defendants McLean testified. Mrs. Jaynes did not testify. The brief testimony of Mr. Jaynes related solely to the sale of cows. It contains no reference to the sale of the real property to defendants McLean.

Although defendants McLean had knowledge of all the facts and circumstances concerning the transaction in which they purportedly purchased from defendants Jaynes a portion of the subject property, and knew whether they had actual notice of plaintiffs' pending action against defendants Jaynes to compel specific performance, they failed to come forward and testify with reference to these crucial matters. Indeed, the only evidence was to the effect that Mr. McLean at least had actual notice of plaintiffs' prior rights.

We note that the answer in the Lawing-McLean suit is a general denial of plaintiffs' essential allegations. Thus, defendants McLean neither alleged nor did they offer evidence tending to show that they were purchasers for a valuable consideration without actual notice of plaintiffs' prior rights.

It seems clear that, with reference to whether defendants McLean had actual notice of the pendency of the Lawing-Jaynes action to compel specific performance of the option contract, both the parties and the trial judge proceeded upon the assumption that the burden of proof was on plaintiffs. It may be that this erroneous assumption by all concerned explains the failure of defendants McLean to testify with reference to whether they had actual notice of plaintiffs' action against defendants Jaynes to compel specific performance.

The rule stated and applied in *Waters v. Pittman, supra,* and in *Whitehurst v. Abbott, supra,* places the burden of proof on the party to whom the property is conveyed to show that he is a purchaser for a valuable consideration and, when an action is pending which affects the title to the property, that he had no actual notice of such action. In the present action, defendants McLean are the persons who have knowledge of all circumstances surrounding their transactions with defendants Jaynes and therefore should be required to establish that they were purchasers for a valuable consideration and had no actual notice of the pendency of the Lawing-Jaynes suit for specific performance when they acquired the deed of 4 March 1971 from defendants Jaynes.

[5, 6]  This distinction between the registration and *lis pendens* statutes should be noted. Under G.S. 47-18(a) conveyances, contracts to convey, and leases for more than three years, *are not valid to pass title* against a purchaser for a valuable consideration unless and until registered in the county where the land lies. Hence, as against a purchaser for a valuable consideration, no title passes prior to registration; therefore, no notice however full or formal takes the place of registration. The *lis pendens* statutes enable a purchaser for a valuable consideration *who has no actual notice* of the pendency of litigation affecting the title to the land to proceed with assurance when the *lis pendens* docket does not disclose a cross-indexed notice disclosing the pendency of such an action.

We are of opinion that a partial new trial must be awarded in the consolidated cases to determine the single issue whether defendants McLean had actual notice of the pending Lawing-Jaynes action for specific performance. All findings of fact made by Judge Thornburg pertinent to plaintiffs' action against defendants Jaynes will stand. The court's adjudication that, as between plaintiffs and defendants Jaynes, plaintiffs are entitled

Lawing v. Jaynes and Lawing v. McLean

to specific performance will stand. Moreover, those findings and that adjudication are binding upon defendants McLean. Defendants McLean will be entitled to the land described in their deed from defendants Jaynes free and clear of any rights of plaintiffs therein *if and when* they establish by the greater weight of the evidence that they were purchasers for a valuable consideration without notice of plaintiffs' pending action against defendants Jaynes. At the next hearing the court will hear the pertinent evidence and determine this issue. If determined in favor of defendants McLean, plaintiffs will have no rights in the property conveyed by defendants Jaynes to defendants McLean. If determined adversely to defendants McLean, plaintiffs will be entitled to specific performance of their option unless at such further hearing it should be made to appear that persons who are not now parties have acquired rights superior to those of plaintiffs.

Accordingly, the decree of specific performance in the judgment of the court below is vacated. The findings of fact and adjudication with reference to plaintiffs' rights as against defendants Jaynes stand and are binding on defendants McLean. The new trial will be limited to the single issue stated above; and, upon the determination thereof, a complete new judgment will be entered consonant with the circumstances then existing.

The Court of Appeals having elected to deal with the merits of defendants' appeal, we considered further review on the merits was appropriate. Hence, plaintiffs' motion to dismiss defendants' appeal for failure to comply with the procedural rules of the Court of Appeals is denied. Too, we are well aware that no exception or assignment of error has been directed to the question we consider crucial. Being of the opinion that the ends of justice require that this crucial issue be determined, we have elected to order that it be done in the exercise of our general supervisory power under Article IV, Section 12(1), of the Constitution of North Carolina.

Accordingly, the decision of the Court of Appeals is modified as set forth herein and the cause is remanded to that court with instructions to remand to the superior court for a partial new trial and a judgment in accordance with this opinion.

Modified and remanded.